UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RAYMOND F. GRANDCHAMP III, an individual residing in the Town of Richmond, County of Washington, and State of Rhode Island, <br><br> and <br><br> LAURIE A. GRANDCHAMP, an individual residing in the Town of West Kingston, County of Washington, and State of Rhode Island <br><br> Plaintiffs, <br><br> v. <br><br> ROLL-A-COVER INTERNATIONAL, a Connecticut limited liability company, with a principal place of business in the Town of Bethany, in the County of New Haven, State of Connecticut, <br><br> Defendant. | Civ. A. No. 1:22-cv-00026-WES <br> (Jury Trial Demanded) |

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Raymond F. Grandchamp III ("Mr. Grandchamp") and Laurie A. Grandchamp ("Mrs. Grandchamp") (collectively referred to as the "Grandchamps" or "Plaintiffs"), by and through undersigned counsel, hereby complain of Defendant Roll-A-Cover International ("RAC") as follows, with Mrs. Grandchamp reserving all rights to contest that she is a party to the contract hereinafter described:

**INTRODUCTION**

1.  In this case the dream of a covered swimming pool for the Grandchamps' family home has turned into a never-ending nightmare. RAC entered into a contract with Mr. Grandchamp whose terms not only violate Rhode Island consumer protection and related laws

but also call for performance of construction and related services that RAC was not, and is not, licensed to perform in Rhode Island. RAC insisted on collecting, and has collected, the full contract price of $78,713.89 before work was complete. During the work toward completion RAC acknowledged but never cured material defects in its product. Yet RAC illegally insisted on a promise of additional payment before it would even try to make the work right, then repeatedly failed to do so. Mr. Grandchamp has rejected the work, and now seeks damages from RAC for the defective product and work.

2. The product is a retractable pool enclosure system that RAC designed, manufactured, and sold to Mr. Grandchamp for use at the Grandchamps' family residence (the "Enclosure System").

3. The Enclosure System fails to perform its essential purpose - it leaks. The Enclosure System suffers from other defects, including scratched glass, oily (rainbow) glass, and a window that moves even in a light wind. RAC has not denied that the Enclosure System leaks and suffers from these other defects but continues to deny responsibility without explanation or excuse.

4. Because having an enclosure system that chronically and incurably leaks is worse than having no enclosure system at all, the Enclosure System materially diminishes the value of the Grandchamps' residence. Taking into account the $78,313.89 Mr. Grandchamp has already paid RAC, it will cost more than $200,000 to remove and replace the Enclosure System with a system that performs, and for 10 years will perform, as RAC promised and warranted.

## PARTIES

5. The Grandchamps are individuals residing in the Town of Richmond, County of Washington, and State of Rhode Island with their three children.

6. Defendant Roll-A-Cover International ("RAC"), is a limited liability company formed under the laws of Connecticut with a principal place of business at 36 Sargent Drive, in the Town of Bethany, in the County of New Haven, and State of Connecticut.

## JURISDICTION AND VENUE

7. Under 28 U.S.C. §1332, this Court has jurisdiction over this matter based on diversity of citizenship with the amount in controversy exceeding $75,000.

8. Under 28 U.S.C. §1332, this Court has federal question jurisdiction based on the Grandchamps' claims under the Magnuson Moss Warranty Act, 14 U.S.C.§2301, *et. seq*. with the amount the Grandchamps claim exceeding the jurisdictional minimum of $50,000.

9. Under 28 U.S.C. §1337 this Court has supplemental jurisdiction of Grandchamps' state law claims, which are closely related to his federal claim.

## FACTUAL ALLEGATIONS

10. Since at least 2002 RAC has been engaged in the business of designing, developing, manufacturing, distributing, marketing, selling, and installing sloped glazing sunroom systems throughout the United States and internationally.

11. On or about September 12, 2020, RAC and Mr. Grandchamp entered into an agreement calling for RAC to design, fabricate, and assist in the installation of the Enclosure System at a price of $73,713.89, a genuine copy of which is attached to this Complaint as **Exhibit A** (the "Sales Agreement").

12. Of the total $78,713.89 paid to RAC, $5,000 was compensation to RAC for providing assistance to Mr. Grandchamp in the installation of the Enclosure System (the "Assisted Installation Alternative"). RAC offered another alternative (the "Full Installation

3

Alternative") at a price of $23,000 but Mr. Grandchamp, being familiar with construction projects, chose the Assisted Installation Alternative after signing the Sales Agreement.

13. Rhode Island law, specifically Gen. Laws 1956 § 5-65-3, required RAC to obtain a license before undertaking, offering to undertake, or submitting a bid to do work as a contractor on a structure in Rhode Island, or arrange to have work done on a structure in Rhode Island.

14. RAC did not have, and still does not have, a Rhode Island license to carry out the installation of, or otherwise work on, the Enclosure System.

15. The Sales Agreement also violates Rhode Island law because it lacks the following provisions required by Gen. Laws 1956 §5-65-3: a summary of Chapter 65 and prescribed text warning owners of mechanic's liens.

16. The Sales Agreement makes no mention of any warranty or any limitation of any of RAC's warranty and other legal responsibilities.

17. Following the date of the Sales Agreement, after Mr. Grandchamp signed it, RAC issued drawings for the Enclosure System. The Drawings contain language purporting to limit RAC's responsibilities, including a disclaimer of warranty for "field labor not 100% performed by RAC."

18. Mr. Grandchamp and contractors hired by Mr. Grandchamp installed portions of the Enclosure System and did so exactly as directed by RAC. RAC has never claimed otherwise, and its only commentary on that work has been complimentary.

19. The Drawings alone do not enable anyone other than RAC to know how to install, repair defects in, or adjust, the Enclosure System.

20. By the time the installation was 80% complete it was obvious to all, including RAC, that the Enclosure System was leaking.

21. Instead of exploring and removing the root cause of the leaks, RAC proceeded to finish the remaining 20% of the installation.

22. RAC's website marketing materials show that RAC personnel installed the leakiest portion of the Enclosure System.

23. RAC personnel either directly made or witnessed every connection on each bay of the Enclosure System during the installation.

24. RAC has not shown, or even claimed, that any of the labor provided by Mr. Grandchamp was deficient in any way.

25. RAC has admitted that not all the necessary and correct parts were available on the site during installation.

26. Upon information and belief, based in part on RAC's admissions and the absence of any evidence of incorrect installation by Mr. Grandchamp and his own contractors, RAC caused or permitted the installation of the Enclosure Systems with incorrect or incomplete parts.

27. RAC, through its President Michael Morris, has warned Mr. Grandchamp not to attempt to repair or adjust the Enclosure System, and that RAC would have no warranty responsibility if Mr. Grandchamp were to make such an attempt.

28. Even though Mr. Grandchamp has already paid RAC in full the $78,713.89 price for the Enclosure System and the Assisted Installation Alternative, and even though RAC knew that the product was leaking and suffered from other defects, RAC has refused to return to the Grandchamp residence to cure the defects unless Mr. Grandchamp agreed to pay RAC an additional $2,500.

29. RAC was, and is, already legally obligated to cure the defects and had, and has, no right to require the additional $2,500.

30.   Desperate to cure the defects, and under duress, Mr. Grandchamp reluctantly agreed to pay RAC the additional $2,500 on the expectation that RAC would accomplish a cure.

31.   RAC sent men to the site twice, but they failed to cure or even reduce the defects.

32.   Despite its repeated failures to stop the leaking and cure other defects, RAC refuses to take any action to attempt to cure those defects unless Mr. Grandchamp pays the additional $2,500.  RAC has also demanded additional compensation of $1,400 to repair items that RAC admits are warranty repairs.

33.   Upon information and belief, based on RAC's admissions and its failure during and after installation to cure the defects, a cure of the defects will require a significant dismantling of the Enclosure System and replacement, reconfiguration, or supplementation of parts, all at great cost.

34.   RAC is using Mr. Grandchamp's refusal to pay the additional $2,500 as an excuse and evasion of its responsibility to either cure the defects or compensate the Grandchamps for them.

35.   In an illegal attempt to unilaterally change the terms of the Sales Agreement after the fact, on or about November 10, 2021, in the form of an invoice for the additional $2,500, RAC sent Mr. Grandchamp a warranty policy, a genuine copy of which is attached as Exhibit B (the "Warranty Policy").  Mr. Grandchamp had never seen the Warranty Policy before.

36.   The practical result of RAC's position is that the Grandchamps must simply live with a leaky Enclosure System or attempt without any of the necessary information known only to RAC to fix it themselves at their expense and at the risk of losing RAC's warranty protection. The Grandchamps are stuck with a product that is worse than no product at all.

## **COUNTS OF THE COMPLAINT**

### **COUNT I**

**Rejection of Goods Under the Uniform Commercial Code,
Gen. Laws 1956 §6A-2-602**

37.     The Grandchamps incorporate by reference the allegations contained in the preceding paragraphs as if set forth in full herein.

38.     The Enclosure System suffers from fundamental defects that undermine the Grandchamps' confidence in its reliability and integrity.

39.     The Enclosure System suffers from nonconformity that substantially impairs its value to the Grandchamps.

40.     The Enclosure System suffers from defects and/or nonconformities that were impossible to discover before installation began.

41.     After installation revealed leaks and other defects the Grandchamps provided RAC with timely notice of, and reasonable opportunity to cure, the defects.

42.     RAC has failed to cure the defects.

43.     The Grandchamps have timely given RAC notice that they have rejected the Enclosure System.

44.     The Grandchamps are entitled to return of the $78,713.89 purchase price for the Enclosure System, the cost of removal and replacement of the Enclosure System (estimated at a minimum of $125,000),  and incidental and consequential damages to the extent provided in R.I. Gen. Laws 1956 §6A-2-602 and applicable law, as well as a security interest in the Enclosure System after its removal to secure the Grandchamps' entitlement to payment.

## COUNT II

### Breach of Express Warranty

45. The Grandchamps incorporate by reference the allegations contained in the preceding paragraphs as if set forth in full herein.

46. The express statements, assertions, marketing materials, and representations by RAC concerning the Enclosure System, as set forth above, constitute express warranties.

47. RAC's express warranties include the warranty that the Enclosure System will be free from manufacturing defects for ten (10) years.

48. RAC has breached such express warranties.

## COUNT III

### Breach of Implied Warranty of Merchantability

49. The Grandchamps incorporate by reference the allegations contained in the preceding paragraphs as if set forth in full herein.

50. RAC is a "merchant" with respect to the goods at issue in this case, as defined in Article 2 of the Rhode Island Uniform Commercial Code.

51. RAC impliedly warranted to the Grandchamps that the Enclosure System was of merchantable quality and fit for its ordinary purpose.

52. The Enclosure System is defective.

53. As a result of the foregoing, the Grandchamps have suffered damages as previously set forth herein that were directly and proximately caused RAC's breach of these implied warranties.

## COUNT IV

### Breach of Implied Warranty of Fitness for a Particular Purpose

54. The Grandchamps incorporate by reference the allegations contained in the preceding paragraphs as if set forth in full herein.

55. RAC gave the Grandchamps advice and recommendations in the selection and purchase of the Enclosure System.

56. RAC knew the location of the Grandchamps residence and the weather to which the residence would be exposed.

57. RAC knew that the Grandchamps were relying upon RAC's skill and judgment to furnish an appropriate enclosure system for this application.

58. The Grandchamps, in fact, relied upon RAC's skill and judgment in purchasing the Enclosure System.

59. The Grandchamps have provided repeated notices to RAC that the Enclosure System is defective.

60. The Grandchamps have suffered damages that were directly and proximately caused by RAC's breach of the implied warranty of fitness for a particular purpose.

## COUNT V

### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

61.     The Grandchamps incorporate by reference the allegations contained in the preceding paragraphs as if set forth in full herein.

62.     The Magnuson-Moss Warranty Act ("MMWA") provides a private right of action by purchasers of consumer products against retailers who fail to comply with the terms of an implied or written warranty. 15 U.S.C. § 2310(d)(1).

63.     RAC has failed to comply with the implied and written warranties applicable to the Enclosure System.

64.     The Grandchamps are a "consumer," as that term is defined in 15 U.S.C. § 2301(3).

65.     The Enclosure System is a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

66.     RAC is the "supplier" and "warrantor," as those terms are defined in 15 U.S.C. § 2301(4)-(5).

67.     RAC was provided notice of the claims raised by the Grandchamps and was afforded reasonable opportunity to inspect and cure the defects claimed.

68.     RAC has refused to honor its written and implied warranty obligations.

69.     RAC has violated the MMWA by breaching the written and implied warranties and by failing to repair or replace the Enclosure System, despite the presence of admitted defects.

70.     The Grandchamps have performed all terms, conditions, covenants, promises and obligations required to be performed under the terms of the express warranty and implied

warranties except for those terms and conditions, covenants, promises and obligations or payments for which performance and/or compliance has been excused by the acts and/or conduct of RAC and/or by operation of law.

71. RAC has violated the MMWA by failing to present to the Grandchamps in a conspicuous and understandable way whatever limitations might apply to RAC's warranties.

72. The Grandchamps have suffered damages, and are entitled to all incidental, consequential, and general damages resulting from RAC's failure to comply with its obligations under the MMWA.

73. Under the MMWA, the Grandchamps are also entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action pursuant to 15 U.S.C. § 2310(d)(2).

## COUNT VI

### Negligence

74. The Grandchamps incorporate by reference the allegations contained in the preceding paragraphs as if set forth in full herein.

75. RAC owed a duty to the Grandchamps to exercise reasonable care in the design, manufacture, quality control and marketing of the Enclosure System, and in its advice on proper installation.

76. RAC breached its duty to the Grandchamps by designing, manufacturing, selling, advertising, and warranting a defective product to the Grandchamps, by failing to give adequate instructions as to installation; and by failing to take those steps necessary to mitigate the damage caused to date and which damages are continuing.

77. RAC knew, or reasonably should have known, that the Grandchamps and their hired subcontractors installed the Enclosure System precisely as instructed by RAC, and that no installation measures are possible that would make up for the defects in the Enclosure System itself.

78. As a direct and proximate cause of the foregoing, the Grandchamps have suffered and will continue to suffer damages and economic loss.

79. The Grandchamps are entitled to damages in an amount to be determined at trial.

## COUNT VII

### Rhode Island Deceptive Trade Practices Act, Gen. Laws 1956 § 6-13.1-1

80. The Grandchamps incorporate by reference the allegations contained in the preceding paragraphs as if set forth in full herein.

81. The conduct described above took place within the State of Rhode Island and constitutes a violation of the Rhode Island Deceptive Trade Practices Act, Gen. Laws 1956 § 6-13.1-1.

82. RAC manufactured and sold the Enclosure System, and it is defective.

83. RAC made representations to the Grandchamps, both via email and while at the Grandchamp residence, acknowledging the defects in the Enclosure System and yet not curing them or paying the Grandchamps compensation for them.

84. RAC, both orally and in writing, made deceptive and manipulative statements regarding its warranty and other legal responsibilities.

85. RAC falsely held itself out as legally and technically qualified to perform installation services for the Grandchamps, when in fact RAC was not duly licensed or qualified.

86. As a direct and proximate result of RAC's unfair and deceptive acts and practices, the Grandchamps have suffered actual damages, and are entitled to punitive damages and equitable relief as the Court may determine.

## COUNT VIII

### Prayer for Declaratory Judgment that the Sales Agreement is Void

87. The Grandchamps incorporate by reference the allegations contained in the preceding paragraphs as if set forth in full herein.

88. The Sales Agreement is illegal because RAC was not licensed to perform the services called for therein and because it lacks the consumer protection provisions required by Rhode Island statutes.

89. The Grandchamps pray for a declaratory judgment voiding the Sales Agreement based on its illegality and ordering RAC to refund all payments it has collected from the Grandchamps.

## COUNT IX

### Breach of Contract

90. The Grandchamps incorporate by reference the allegations contained in the preceding paragraphs as if set forth in full herein.

91. To the extent, if any, that the Court does not void the Sales Agreement in its entirety, RAC has materially breached the Sales Agreement, including RAC's obligation under Rhode Island law to fulfill its obligation of good faith and fair dealing.

92. Because of RAC's breach of contract (with Mrs. Grandchamp joining in this Count in the alternative and reserving all right to deny that she is a party to the Sales Agreement), the Grandchamps have suffered direct, incidental, and consequential damages,

including without limitation loss of the $78,713.89 payment to RAC, the cost of removal and replacement of the Enclosure System (estimated at a minimum of $125,000), or if not so removed and replaced, the diminution in value of the Grandchamps' residence.

## COUNT X

### Unjust Enrichment

93. The Grandchamps incorporate by reference the allegations contained in the preceding paragraphs as if set forth in full herein.

94. In illegally insisting on collecting, and collecting, $78,713.89 from the Grandchamps RAC has received a benefit.

95. It would be unjust and inequitable for RAC to retain this benefit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Raymond F. Grandchamp III and Laurie A. Grandchamp respectfully request that the Court enter judgment in his favor against Defendant Roll-A-Cover International, LLC as follows:

On Count I (Rejection), declaring Grandchamps' rejection of the Enclosure System to be rightful, and directing RAC to pay the Grandchamps:

    (a) the full purchase price of $78,713.89;

    (b) the cost of dismantling and removing the Enclosure System from the Grandchamp residence and replacing it with a conforming product, estimated at a minimum of $125,000 (with the Grandchamps retaining a security interest in the Enclosure System, and with salvage and other rights attendant to rightful rejection); and

    (c) all incidental and consequential damages;

<u>On Counts II through IV</u>, (Breaches of Express Warranty, Implied Warranty of Merchantability, and Implied Warranty of Fitness for a Particular Purpose, respectively), awarding the Grandchamps all direct, incidental, and consequential damages;

<u>On Count V</u> (Violation of Magnusson-Moss Warranty Act), awarding the Grandchamps all direct, incidental, and consequential damages plus attorney's fees and costs;

<u>On Count VI</u> (Negligence), awarding the Grandchamps all damages, including damages to property other than the Enclosure System itself, including diminution in the value of the Grandchamp residence if the Enclosure System is not removed and replaced;

<u>On Count VII</u> (Violation of the Rhode Island Deceptive Trade Practices Act), awarding the Grandchamps all actual damages, and punitive damages and equitable relief as the Court may determine;

<u>On Count VIII</u> (Declaratory Judgment that the Sales Agreement is Void), judgment declaring the Sales Agreement void and ordering the refund of all payments the Grandchamps have made to RAC;

<u>On Count IX</u> (Breach of Contract), to the extent the Court does not void the Sales Agreement, awarding the Grandchamps all direct, incidental, and consequential damages;

<u>On Count X</u> (Unjust Enrichment), ordering RAC to refund to the Grandchamps the $78,713.89 the Grandchamps have paid to RAC, together with whatever additional equitable relief the Court deems fair; and

As to all Counts, any further legal or equitable relief the Court deems appropriate, including without limitation attorney's fees, interest, and costs.

## **JURY DEMAND**

Plaintiffs Raymond F. Grandchamp III and Laurie A. Grandchamp hereby demand a trial by jury on all issues so triable.

DATED at Portland, Maine this 22nd day of April 2022.

/s/ Daniel J. Mitchell
Daniel J. Mitchell, R.I. Bar No. 9635

Bernstein Shur
100 Middle Street; PO Box 9729
Portland, Maine 04104
207-774-1200
dmitchell@bernsteinshur.com

Attorney for Plaintiffs Raymond F. Grandchamp III
and Laurie A. Grandchamp